1  Greg McLawsen, Washington State Bar no. 41870
   Sound Immigration
2  113 Cherry St. ECM# 45921
   Seattle, WA 98104-2205
3  greg@soundimmigration.com
   (855) 809-5115
4  Attorney for Plaintiff Sheryl May Rimas Eugenio
   Pro hac vice application impending
5
   Patrick Kolasinski, SBN#262363
6  The Law Offices of Patrick Kolasinski
   1120 14th Street, Suite 4
7  Modesto, CA 95354
   patrick@kolasinski-law.com
8  Local Co-Counsel for Pro Hac Vice Application

9
                    IN FEDERAL DISTRICT COURT FOR THE
10
              NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE
11

12  SHERYL MAY RIMAS EUGENIO an           No.
    individual,
13
                           Plaintiff,
14                                                 **COMPLAINT FOR BREACH OF**
                  v.
15                                                 **THE USCIS FORM I-864**

                                                   **AFFIDAVIT OF SUPPORT**
16  JOHNY BENSON EUGENIO, an
    individual,                                    **UNDER SECTION 213A OF THE**
17                         Defendant.              **IMMIGRATION AND**

18                                                 **NATIONALITY ACT**

19

20                              **I. INTRODUCTION**

21

22

23

1.      This is a lawsuit to recover damages under the United States and Immigration Services ("USCIS") Form I-864, Affidavit of Support Under Section 213A of the Immigration and Nationality Act ("Affidavit of Support").

2.      The Affidavit of Support was created by the United States Congress in 1996 to ensure that family-sponsored immigrants are ensured a basic level of financial wellbeing, sufficient to meet the most basic needs of life.

3.      In mandating the Affidavit of Support, Congress required visa petitioners, rather than the American people, serve as a financial safety net to new immigrants.

4.      The Affidavit of Support is a legally binding contract between the sponsor and the United States government, of which the intending immigrant is a third-party beneficiary.

5.      Plaintiff Sheryl May Rimas Eugenio is the beneficiary of an Affidavit of Support signed by Defendant Johny Benson Eugenio, her former U.S. citizen husband.

6.      Mr. Eugenio has failed to provide Ms. Rimas with the basic level of financial support promised in the Affidavit of Support. This lawsuit seeks to compel Mr. Eugenio to fulfill the support duty mandated by the Affidavit of Support and associated federal law, and seeks damages for Mr. Eugenio's breach of contract.

//

/

## II. JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under the federal Immigration and Nationality Act *See* 8 U.S.C. § 1183a(e)(I).

8.      This Court has personal jurisdiction over Mr. Eugenio as, by signing Affidavits of Support, he submitted to the jurisdiction of any court with subject matter jurisdiction over Ms. Rimas's claims. 8 U.S.C. § 1183a(a)(1)(C).

9.      Venue is proper in this District as Mr. Eugenio resides in Marina, California.

10.     Venue is additionally proper in this District as a substantial part of the events or omissions giving rise to Ms. Rimas's claims occurred in this District, to wit, she has suffered the injury of being without the financial support guaranteed by the Affidavit of Support. 28 U.S.C. § 1391(b)(2).

## III. PARTIES

10.     Ms. Rimas is a citizen of the Philippines and lawful permanent resident ("Resident") of the United States of America.

11.     Ms. Rimas currently resides with her parents in Marina, California.

12.     Mr. Eugenio is a citizen the United States of America and is Ms. Rimas's former spouse.

13.     As further alleged below, Mr. Eugenio served as Plaintiff's immigration sponsor by executing an Affidavit of Support, thereby contractually promising to provide a specified level of income to Ms. Rimas.

14.     Mr. Eugenio resides in Marina, California.

## VI. FACTUAL ALLEGATIONS

**Background concerning the Affidavit of Support.**

15.     United States immigration law has long prohibited immigration by individuals deemed likely to be a drain on public resources.

16.     Since 1882 federal law has excluded the immigration of individuals considered "likely to become a public charge." Act of Aug. 3, 1882, 22 Stat. 214.

17.     The current immigration statute, in effect at all times material to the facts alleged herein, forbids the entry of immigrants determined likely to become a "public charge." 8 U.S.C. § 1182(a)(4).

18.     The Affidavit of Support is required for a family-based immigrant visa applicant to overcome public charge inadmissibility. *See* 8 U.S.C. § 1182(a)(4)(C).

19.     The only family-based immigrants who are exempt from submitting an Affidavit of Support are those classes listed at 8 C.F.R. § 213a.2(a)(2)(ii), to wit: (A) self-petitioners under the Violence Against Women Act; (B) grandfathered immigrants with petitions pending prior to December 19, 1997; (C) those who have worked and/or may be credited with 40 qualifying quarters of coverage as defined under title II of the Social Security Act; (D) a child admitted under 8 U.S.C. § 1181(a) and 8 C.F.R. § 211.1(b)(1);  and (E) a child who will automatically acquire citizenship under 8 U.S.C. § 1431.

/

20.     Creation of the Affidavit of Support was mandated by Congress to ensure that certain classes of immigrants to the United States would be guaranteed a level of financial support necessary to meet basic human needs. *Cf.* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009.

21.     The immigration agencies published interim regulations implementing the Affidavit of Support in the summer of 1997, which regulations were finalized in 2006. Affidavits of Support on Behalf of Immigrants, 62 Fed. Reg. 54346 (Oct. 20, 1997) (to be codified at 8 C.F.R. § 213.a1 *et seq*.) (hereinafter Preliminary Rules); Affidavits of Support on Behalf of Immigrants, 71 Fed. Reg. 35732 (June 21, 2006).

22.     The Affidavit of Support has been mandatory in marriage-based immigrant visa cases at all times material to the case at bar.

23.     The Affidavit of Support is a legally binding contract between the sponsor and the United States Government. 8 U.S.C. § 1182(a)(1)(B).

24.     By signing the Affidavit of Support, the sponsor agrees to provide the intending immigrant with any support necessary to maintain her at an income that is at least 125 percent of the Federal Poverty Guidelines for her household size. 8 U.S.C. § 1182(a)(1)(A).

25.     The Federal Poverty Guidelines ("poverty line") are published annually in the Federal Register.

/

26.     In any given year for which a sponsored immigrant is entitled to support under the Affidavit of Support, she is entitled to support based on the poverty line in effect for that year according to the individual's U.S. state of residency.

27.     The Affidavit of Support obligation may be enforced by the immigrant beneficiary, who is a third-party beneficiary thereof. 8 U.S.C. § 1182(a)(1)(B); 8 C.F.R. § 213a.2(d).

28.     Per 8 C.F.R. § 213a.4(a)(2) a sponsored immigrant is not required to make any demand for payment from a sponsor prior to commencing a lawsuit to enforce the sponsorship obligation under the Affidavit of Support.

29.     By signing the Affidavit of Support, the sponsor agrees to submit to the personal jurisdiction of any federal or state court that has subject matter jurisdiction over a lawsuit against the sponsor to enforce obligations under the Affidavit of Support. 8 U.S.C. § 1183a(a)(1)(C).

30.     By signing the Affidavit of Support, the sponsor certifies under penalty of perjury that the sponsor has read and understands each part of the obligations described in the Affidavit of Support and agrees freely and without any mental reservation or purpose of evasion to accept ach of those obligations in order to make it possible for the immigrant(s) listed in the Affidavit of Support to become lawful permanent residents of the United States.

31.     The Affidavit of Support sponsor also agrees to notify the Government of any change in the sponsor's address within 30 days of the change by filing a Form I-865. *See* 8 U.S.C. § 1183a(d).

32.     A sponsor's duties under the Affidavit of Support commence when the beneficiary becomes a Resident based on an application that included the Affidavit of Support. 8 C.F.R. § 213a.2(e)(1).

33.     An Affidavit of Support sponsor must continue to perform under the contract until the occurrence of one of five events (collectively "the Terminating Events") set forth in the contract.

34.     The sponsor's obligation under the Affidavit of Support conclude once the beneficiary becomes a U.S. citizen (the "First Terminating Event"). 8 C.F.R. § 213a.2(e)(2)(i)(A).

35.     The sponsor's obligation under the Affidavit of Support concludes once the beneficiary has worked or can receive credit for 40 quarters of work under the Social Security Act (the "Second Terminating Event"). 8 U.S.C. § 1183a(a)(3)(A); 8 C.F.R. § 213a.2(e)(2)(i)(B).

36.     The sponsor's obligation under the Affidavit of Support concludes once the beneficiary is no longer a permanent resident and has departed the U.S. (the "Third Terminating Event"). 8 C.F.R. § 213a.2(e)(2)(i)(C).

37.     The sponsor's obligation under the Affidavit of Support concludes once the beneficiary is subject to an order of removal but applies for and obtains in removal proceedings a new grant of adjustment of status based on a new affidavit of support, if required (the "Forth Terminating Event"). 8 C.F.R. § 213a.2(e)(2)(i)(D).

/

38.     The sponsor's obligation under the Affidavit of Support concludes once the beneficiary dies (the "Fifth Terminating Event"). 8 C.F.R. § 213a.2(e)(2)(i)(E).

39.     In order to serve as an Affidavit of Support sponsor, an individual must demonstrate income at our above 125% of the Federal Poverty Guidelines (FPG) for the individual's household size. 8 U.S.C. § 1183a(f)(1)(E).

40.     If the income of the visa petitioner is below 125% of the FPG, the individual may demonstrate that he or she owns assets equal to at least five times the income shortfall (or three times in the case of marriage-based case). Such assets must be convertible to U.S. cash within 12 months. 8 U.S.C. § 1183a(f)(6)(A)(ii).

41.     An Affidavit of Support is considered executed once it is signed and submitted to either USCIS or the Department of State in support of an intending immigrant's application. 8 C.F.R. § 213a.2(a)(B)(ii).

42.     Once executed, the Affidavit of Support becomes a binding contract between the sponsor and the United States government for the benefit of the sponsored immigrant. 8 C.F.R. § 213a.2(d).

43.     For purposes of calculating damages under the Affidavit of Support, "income" refers to monies that are subject to federal income taxation. 8 C.F.R. § 213a.1.

///

//

/

**Plaintiff's immigration to the United States.**

44.     The parties became engaged to be married while Ms. Rimas was residing in the Philippines.

45.     On October 24, 2016, Mr. Eugenio signed USCIS Form I-129F, Petition for Alien Finacé(e)("Visa Petition").

46.     A copy of the Visa Petition as contained in Ms. Rimas's USCIS alien file is attached as Exhibit 2.

47.     The Visa Petition listed Ms. Rimas as the intending immigrant beneficiary. Ex. 2, p. 2. The Visa Petition also listed Ms. Rimas's minor child ("Child"). Ex. 2, p. 3.

48.     Mr. Eugenio filed the Visa Petition with USCIS.

49.     By filing the Visa Petitions, Mr. Eugenio initiated the process of securing Resident status for Ms. Rimas.

50.     USCIS approved the Visa Petition on January 18, 2017.

51.     Ms. Rimas thereafter filed visa applications for herself and Child.

52.     The State Department granted a K-1 category non-immigrant visa to Ms. Rimas on March 30, 2017.

53.     A copy of Ms. Rimas's visa foil as contained in her USCIS alien file is attached as Exhibit 3.

54.     The State Department granted Child a K-2 category non-immigrant visa on April 3, 2017.

55.     A copy of Child's visa foil as contained in Ms. Rimas's USCIS alien file is attached as Exhibit 4.

56.     Ms. Rimas and Child entered the United States on April 26, 2017.

57.     Copies of Ms. Rimas's and Child's U.S. Customs and Border Protection Forms I-94 Records of Arrival, as contained in Ms. Rimas's USCIS alien file, are attached as Exhibits 5 and 6.

58.     Ms. Rimas and Mr. Eugenio were married within 90 days of her arrival in the United States.

59.     On June 29, 2017, Ms. Rimas signed USCIS Form I-485, Application to Adjust Status ("Residency Application").

60.     A copy of the Residency Application as contained in Ms. Rimas's USCIS alien file is attached as Exhibit 7.

61.     Ms. Rimas filed the Residency Application with USCIS.

62.     Ms. Rimas's Residency Application was based on Mr. Eugenio's Visa Petition, filed as her U.S. citizen spouse.

63.     Ms. Rimas's Residency Application also sought residency status for Child as a derivative beneficiary of the Visa Petition. Ex. 6, p. 2.

64.     Ms. Rimas did not qualify for any of the grounds at 8 C.F.R. § 213a.2(a)(2)(ii) that would have exempted her from the requirement to file an Affidavit of Support.

//

/

1    65.    On September 30, 2017, Mr. Eugenio signed an Affidavit of Support,

2    listing Ms. Rimas as the intending immigrant beneficiary (the "Affidavit of

3    Support").

4    66.    A copy of the Affidavit of Support, as contained in Ms. Rimas's USCIS

5    alien file, is attached as Exhibit 1.

6    67.    Mr. Eugenio caused the Affidavit of Support to be filed with USCIS in

7    support of Ms. Rimas's Residency Application.

8    68.    In support of the Affidavit of Support, Mr. Eugenio filed proof of his

9    income in the form of documentation of his federal income tax filings with the

10   Internal Revenue Service.

11   69.    On June 3, 2019, USCIS approved Ms. Rimas's Residency Application.

12   70.    Ms. Rimas and Child became Residents on June 3, 2019.

13   **Mr. Eugenio's breach of contract.**

14   71.    Mr. Eugenio's duties under the Affidavit of Support when Ms. Rimas

15   became a Resident on June 3, 2019.

16   72.    Ms. Rimas's Resident status was based on an application that included

17   the Affidavit of Support signed by Mr. Eugenio.

18   73.    The Affidavit of Support was "executed" and is therefore an enforceable

19   contract. 8 C.F.R. § 213a.2(a)(B)(ii); 8 C.F.R. § 213a.2(d).

20   74.    In July 2022, Ms. Rimas ceased residing with Mr. Eugenio.

21   75.    Since her separation from Mr. Eugenio, Ms. Rimas has earned no

22   income.

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

76.   Mr. Eugenio was ordered to pay monthly spousal support in the amount of $1,284 retroactive to July 8, 2022. A copy of the associated Court order is attached as Exhibit 8.[1]

77.   The parties' marriage was dissolved on February 6, 2023. A copy of the final judgment is attached as Exhibit 9.

78.   Under the parties' final divorce judgment, Mr. Eugenio's spousal support continues until further court order. Ex. 9, p. 7.

79.   At all times material, Ms. Rimas has had household size of two for purposes of Mr. Eugenio's support obligations under the Affidavit of Support, and has resided in the lower 48 states.

80.   For 2022, 125 percent of the poverty line for a household of two in the lower 48 states was $22,888 per annum or $1,907 per month.

81.   After offsetting for Mr. Eugenio's alimony payments, Ms. Rimas suffered damages in the amount of $3,738 in 2022.[2]

82.   For 2023, 125 percent of the poverty line for a household of two in the lower 48 states is $24,650 per annum or $2,054 per month.

83.   After offsetting for Mr. Eugenio's alimony payments, Ms. Rimas suffered damages in the amount of $3,860 through May 31, 2023.[3]

84.   Ms. Rimas's direct damages total $7,598 through May 31, 2023.

---

[1] Although Mr. Eugenio has not yet paid off his support arrearages, those debts are credited to him for purposes of calculating damages in this Complaint.

[2] (6 months x $1,907/month) – (6 months x $1,284/month) = $3,738.

[3] (5 months x $2,054/month) – (5 months x $1,284/month) = $3,860.

85.     On April 14, 2023, Ms. Rimas contacted Mr. Eugenio though counsel and requested his compliance with the Affidavit of Support, setting forth a settlement proposal for the same.

86.      No voluntary resolution of Ms. Rimas's claims was achieved.

**Facts concerning Terminating Events.**

87.     No event has occurred that would constitute a Terminating Event under the Affidavits of Support.

88.     First Terminating Event has not occurred because Ms. Rimas has not become a U.S. citizen.

89.     The Second Terminating Event has not occurred because Ms. Rimas has neither worked nor can receive credit for 40 quarters of work under the Social Security Act.

90.     The Third Terminating Event has not occurred because Ms. Rimas has not both lost status as a permanent resident and departed from the U.S.

91.     The Forth Terminating Event has not occurred because Ms. Rimas is not both subject to an order of removal and has also applied for and obtained in removal proceedings a new grant of adjustment of status based on a new affidavit of support (if required).

92.     The Fifth Terminating Event has not occurred because Ms. Rimas is alive.

93.     Mr. Eugenio's duties under the Affidavits of Support remain in effect.

/

# V. CLAIMS FOR RELIEF

**Breach of contract.**

94.     By executing the Affidavit of Support, the Defendant entered into an express written contract with the United States Government.

95.     Ms. Rimas is a third-party beneficiary of the Affidavit of Support.

96.     Ms. Rimas has standing as third-party to enforce her rights under the Affidavit of Support.

97.     Under the express terms of the Affidavit of Support, Mr. Eugenio agreed to provide Ms. Rimas with any support necessary to maintain her at an income that is at least 125 percent of the Poverty Line for her household size.

98.     Mr. Eugenio's responsibility to provide income support commenced on June 3, 2019 when Ms. Rimas became a lawful permanent resident of the United States.

99.     All conditions precedent to Mr. Eugenio's duty to perform on the Affidavit of Support were fulfilled as of June 3, 2019.

100.    Mr. Eugenio has breached the Affidavit of Support by failing to provide income support to Ms. Rimas.

101.    Since becoming a Resident, Ms. Rimas has earned no income.

102.    Since Ms. Rimas became a Resident, Mr. Eugenio has made no financial payments to Ms. Rimas pursuant to his obligation under the Affidavit of Support.

1    103.     From July 2022 through May 31, 2023, Ms. Rimas has suffered direct

2    damages in the amount of $7,598.

3

4                            **VI. REQUEST FOR RELIEF**

5    Plaintiff requests the following relief from the Court:

6    A.       Entry of judgment against Mr. Eugenio and in favor of Ms. Rimas on each

7    and every cause of action asserted herein;

8    B.       An award of direct damages in the amount of $7,598 through May 31,

9    2023;

10   C.       An award of additional direct damages in an amount equivalent to 125%

11   of the poverty line for a household size of two for the lower 48 states for the

12   period from June 1, 2023, less spousal support paid by Mr. Eugenio, to the date

13   on which judgment issues;

14   D.       An order of specific performance, requiring Mr. Eugenio to make monthly

15   payments to Ms. Rimas in the amount of 125% the poverty line for a household

16   of two, less actual income, until the occurrence of one of the Terminating Events;

17   E.       An award of all Plaintiff's attorney fees;

18   F.       An award of all Plaintiff's costs;

19   G.       The right to amend this complaint to conform to the evidence presented at

20   trial; and

21   H.       Such other and further relief in Plaintiff's favor as the Court may deem

22   just and equitable under the circumstances.

23

1

Dated: June 2, 2023,

2
    /s/Patrick Kolasinski               /s/Greg McLawsen
    Patrick Kolasinski                Greg McLawsen

3
    California State Bar no. 262363    Washington State Bar no. 41870
                                            *Pro hac vice application impending*

4

5
    Law Offices of Patrick Kolasinski    Sound Immigration
    1120 14th Street, Suite 4          113 Cherry St. ECM# 45921

6
    Modesto, CA 95354              Seattle, WA 98104-2205
    patrick@kolasinski-law.com       greg@soundimmigration.com

7
    (209) 408-0104                 (855) 809-5115
                             *Attorneys for Plaintiff Sheryl May Rimas Eugenio*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23