UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERYL MAY RIMAS EUGENIO,<br><br>Plaintiff,<br><br>v.<br><br>JOHNNY BENSON EUGENIO,<br><br>Defendant. | Case No. 23-cv-02832-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES**<br><br>Re: Dkt. No. 66 |

Pending before the Court is Plaintiff's motion for attorneys' fees. Dkt. No. 66. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons discussed below, the Court **GRANTS IN PART and DENIES IN PART** Plaintiff's motion, and awards attorneys' fees in the amount of $28,920.

**I.     BACKGROUND**

Since the Court provided extensive factual background in its May 1, 2024 order granting Ms. Rimas' motion for summary judgment, it will summarize only the most germane points here. *See* Dkt. No. 62.

On June 8, 2023, Sheryl May Rimas Eugenio ("Ms. Rimas" or "Plaintiff") filed suit against her ex-husband, Johnny Benson Eugenio ("Mr. Eugenio" or "Defendant"), asserting a breach of contract claim based on his alleged failure to support her and her daughter with the level of income required under the affidavits of support ("the Affidavits") he signed as their immigration sponsor. *See generally* Dkt. No. 1 ("Compl."); *see also* Dkt. No. 1-1, Ex. 1 (Ms. Rimas' affidavit), Dkt. No. 60-1, Ex. 1 (daughter's affidavit). Per 8 U.S.C. § 1183a, an affidavit of support (i.e. USCIS Form I-864) requires sponsors like Mr. Eugenio to "provide support to

maintain the sponsored alien at an annual income that is not less than 125 percent of the Federal poverty line during the period in which the affidavit is enforceable[.]" 8 U.S.C. § 1183a(a)(1)(A); *see* Compl. ¶¶ 58, 65. Contending that Mr. Eugenio failed to provide this mandated level of support, Plaintiff filed a motion for summary judgment on February 22, 2024 requesting past-due financial support and specific performance of the Affidavits. *See* Dkt. No. 50.

On May 1, 2024, having found that Defendant did not provide Plaintiff's household with the financial support required by the Affidavits he executed, the Court granted Plaintiff's motion for summary judgment. *See* Dkt. No. 62. After reviewing a supplemental calculation of damages provided by Plaintiff, the Court entered judgment for Plaintiff and against the Defendant in the amount of $16,925.00. *See* Dkt. No. 65. On May 22, 2024, Plaintiff filed a motion for attorneys' fees. *See* Dkt. No. 66 ("Mot."). Defendant, who proceeds pro se, did not oppose the motion or otherwise file a statement of non-opposition, and Plaintiff did not file any further briefing.[1]

## II. DISCUSSION

### A. Attorneys' Fees Under 8 U.S.C. § 1183a(c)

Under "[t]he bedrock principle known as the American Rule . . . [e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 253 (2010). Section 1183a(c) is one such statute, as it authorizes litigants – in a departure from the American Rule – to pursue legal fees for their attorneys. 8 U.S.C. § 1183a(c) ("Remedies available to enforce an affidavit of support under this section include . . . an order for specific performance and payment of legal fees . . . ."). Given that Plaintiff sued to enforce the Affidavits Mr. Eugenio executed, the Court finds that Ms. Rimas is

---

[1] However, Plaintiff's counsel, Greg McLawsen, recently filed a notice informing the Court of a troubling development. In response to an email from Mr. McLawsen concerning the possibility of Mr. Eugenio entering into a voluntary payment plan, Mr. Eugenio, among other things, attached a photo of Mr. McLawsen and his family in front of their home and stated "[l]et me know if you want me to visit you in Seattle to discuss in person. You have a nice family." *See* Dkt. No. 70; *see also* Dkt. No. 70-1 (email exchange). Mr. McLawsen believes that, in context, "Mr. Eugenio's email was clearly meant to communicate a threat to the welfare both of myself and my young children." Dkt. No. 70 ¶ 5. The Court agrees that this is a reasonable interpretation of Mr. Eugenio's email. While Ms. McLawsen did not request any Court action at this time, the Court warns Defendant that leveling threats against the parties or their attorneys is absolutely unacceptable. Should such behavior reoccur, the parties and their attorneys are directed to promptly inform the Court, and the Court will take further action as it deems necessary.

entitled under section 1183a(c) to seek a fee award for the attorneys – Mr. McLawsen and Mr. Kolasinski – who successfully prosecuted the case on her behalf.

### B. Reasonableness of Plaintiff's Attorneys' Fee Request

Having found that Plaintiff is permitted to seek attorneys' fees, the Court must next consider whether the fees Mr. McLawsen and Mr. Kolasinski have requested are reasonable.

The Ninth Circuit uses the "lodestar" method to determine reasonable attorney fees. *See Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008). The court calculates the lodestar "by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Welch v. Metro Life Ins., Co.*, 480 F.3d 942, 945 (9th Cir. 2007). Courts assessing reasonableness consider factors such "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir.1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 (1992).

#### i. Reasonableness of Hourly Rate

To calculate a reasonable hourly rate, courts "should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986), *opinion amended on denial of reh'g*, 808 F.2d 1373 (9th Cir. 1987). The party requesting attorneys' fees bears the burden of producing satisfactory evidence of the prevailing market rate. *See Camacho*, 523 F.3d at 980. "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

1    Here, Mr. McLawsen requests an hourly rate of $600, and his local co-counsel Mr.
2  Kolasinski requests an hourly rate of $550. Mot. at 11. Mr. McLawsen argues his rate is
3  reasonable considering both his expertise and the prevailing market rate for this type of "niche
4  immigration work." *Id*. at 11. According to his CV, Mr. McLawsen has over thirteen years of
5  experience enforcing affidavits of support, and has additionally written numerous articles and
6  given CLE trainings on the topic. *See* Dkt. Nos. 67-5 (CV), 67 ("McLawsen Decl.") ¶ 29. In
7  support of his requested rate, Mr. McLawsen provided the Court with five declarations from
8  attorneys within the immigration bar with over a hundred years' collective experience, which,
9  among other things, describe him as "the most experienced attorney in the country" within the
10 specialized field of Form I-864 affidavit enforcement, and find his requested hourly fee
11 "eminently reasonable" on that basis. *See* Dkt. No. 67-4 at 5. Further, to support the contention
12 that his request is reasonable given market rates, Mr. McLawsen cites comparable cases in this
13 district and elsewhere in which courts have approved rates ranging from $275 to $600 per hour for
14 attorneys performing similar Form I-864 affidavit of support work. Mot. at 17 (citing *Belevich v.*
15 *Thomas*, 2022 WL 6502321 at *2 (N.D.Ala., 2022) (rate: $275/hour); *Dorsaneo v.*
16 *Dorsaneo*, Case No. 17-cv-00765, Dkt Nos. 120, 142 (N.D. Cal. May 11, 2018) (rate: $375/hour);
17 *Burkhalter v. Burkhalter*, EDCV19272JGBSPX, 2022 WL 6705777, at *3–4 (C.D. Cal. Aug. 2,
18 2022) (rate: $400/hour)[2]; *Flores v. Flores*, 3:21-CV-05814-DGE, 2022 WL 3586871, at *2 (W.D.
19 Wash. Aug. 22, 2022) (rate: $500/hour); *Mao v. Bright*, 645 F.Supp.3d 805, 815 (S.D. Ohio 2022)
20 (rate: $600/hour); *Shagoofa v. Eshaqzi*, No. 822CV01824FWSJDE, 2024 WL 1600657, at *6
21 (C.D. Cal. Feb. 26, 2024) (rate: $600/hour). Given the specialized nature of this case, his
22 experience and reputation, and the prevailing market rate for litigators of that caliber, the Court

---

[2] The district court's order awarding fees in *Burkhalter v. Burkhalter* was ultimately vacated and remanded based on the number of hours awarded, but no fault was found with the approved hourly rate. *See Burkhalter v. Burkhalter*, No. 22-55909, 2023 WL 7490053, at *1 (9th Cir. Nov. 13, 2023) ("In its initial fee order, the district court determined that Plaintiff counsel's hourly rate was reasonable based on prevailing market rates in the relevant legal community, and it excluded entries for clerical work and duplicative tasks. However, the district court provided no explanation why it found over 900 hours expended between four attorneys and eight timekeepers in total was reasonable under the circumstances of this case, or indeed why an attorney's fee award of $254,036.15 was reasonable in light of the jury's award of only $31,562.50 in arrears.").

4

concludes that while it is on the high end, Mr. McLawsen's rate of $600/hour is reasonable.

While the evidence offered for Mr. McLawsen's rate was substantial, counsel failed to adequately justify the rate for Mr. Kolasinski, the local counsel on this case. The motion includes essentially a passing reference to Mr. Kolasinski's rate, arguing that $550 per hour "is appropriate for an experienced litigator in California[,]" but provides no further evidence to support that assertion. Mot. at 12. Nevertheless, the Court provided Mr. Kolasinski another opportunity to substantiate his requested rate out of recognition that he apparently was out of the country at the time the fee motion was filed. *See* Dkt. No. 71 (order to show cause). But the supplemental declaration he ultimately filed fell short of meeting his burden to show that $550/hour is the prevailing market rate for attorneys with comparable experience practicing in a similar market and discipline. Mr. Kolasinski's declaration only describes his experience in the field in general terms, and asserts without including a case citation that "[t]he federal district court for the Central District of California recently approved [his] hourly [rate] as being reasonable." Dkt. No. 74 ¶ 31. When the Court ordered him to produce the court order from the Central District that supposedly found his rate reasonable, Dkt. No. 75, Mr. Kolasinski filed two orders from *Shagoofa v. Eshaqzi*, Case No. 822CV01824FWSJDE (C.D. Cal.). *See* Dkt. No. 77. But a review of those orders makes clear that Mr. Kolasinski's declaration mischaracterizes that court's findings (which perhaps explains why he did not provide a citation in his declaration in the first place).

On February 24, 2024, the *Shagoofa* court awarded attorney's fees to Mr. McLawsen after applying the lodestar analysis, but did not do the same for Mr. Kolasinski (which is unsurprising, given that the underlying motion did not request fees for him). *See Shagoofa*, 2024 WL 1600657 *6. And although Mr. Kolasinski *was* ultimately awarded $5,500 in *Shagoofa*, that sum was approved in a one-and-a-half-page order that summarily granted the parties' Joint Motion for Entry of Agreed Judgment and did not perform any analysis as to the attorneys' fees at issue. *See* Dkt. No. 77-1. In other words, Mr. Kolasinski's award was not subjected to testing by the court, but was instead arrived at by a settlement agreement. Given that *Shagoofa* therefore clearly does not stand for the proposition that a court "approved" his hourly rate as "reasonable," the Court rejects Mr. Kolasinski's inaccurate and self-serving mischaracterization (made under penalty of

1  perjury) of that case.

2        Based on his weak showing of reasonableness, it would be well within this Court's
3  discretion not to award Mr. Kolasinski any fees at all. However, given Mr. Kolasinski's
4  documented labor as co-counsel on this case, as well as his many years of experience as a litigator
5  in this specialized legal field, the Court ultimately finds that a significantly reduced rate of
6  $300/hour (half of the rate approved for Mr. McLawsen, who witnesses have characterized in
7  declarations as "the most experienced attorney in the country" in this field) is justifiable under the
8  circumstances.

### ii. Reasonableness of Hours Billed

To determine whether an attorney's reported hours are reasonable, a Court must consider "whether, in light of the circumstances, the time could reasonably have been billed to a private client." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). "The party seeking fees bears the burden of documenting the hours expended in the litigation and must submit evidence supporting those hours[.]" *Welch*, 480 F.3d at 945–46.

The Court has carefully reviewed the detailed billing documentation counsel provided and finds that they expended a reasonable number of hours litigating this matter, which has run for over a year and required motion practice. Dkt. Nos. 67-6 (McLawsen billing), 67-7 (Kolasinski billing). Mr. McLawsen reports that he billed a total of 40.65 hours and that his local co-counsel, Mr. Kolasinski, billed 15.1 hours. *Id*. The Court finds the hours reported by Plaintiff's attorneys reasonable in light of the Court's experience in similar cases, the attorneys' level of experience, and the nature of the work. By way of example, Mr. McLawsen reports spending 6.19 hours on mediation-related tasks, and 7.15 hours on drafting, revising, and filing the motion for summary judgment. Dkt. No. 67-6. These amounts appear commensurate with the complexity of the tasks he completed, and his experience conducting like work. Mr. Kolasinski reports he spent most of his 15.1 total billed hours communicating either with Defendant (who was unrepresented) or co-counsel, which again appears proper given the consultatory nature of Mr. Kolasinski's role as local counsel on the case. Dkt. No. 67-7. To avoid "artificially inflat[ing] the total number of hours billed," attorney time spent communicating with co-counsel is reflected only in Mr. Kolasinski's

billing records, which the Court finds appropriate. *See* Dkt. No. 74.

Notably, the Court observes that throughout this matter, Plaintiff's counsel – who took this case on contingency, *see* Mot. at 14 – attempted to mitigate the need for incurring attorneys' fees. Based on the Court's review of the record, it appears that counsel engaged in good faith attempts to resolve the matter without protracted litigation based on their assessment (with which the Court agrees) that resolution of this case should not have required such litigation. Though Plaintiff's counsel attempted to explore multiple offramps that would have resulted in a speedier resolution without motions practice, it is the Court's understanding that Defendant did not accept those opportunities. *See, e.g.*, McLawsen Decl. ¶ 16 (averring that Mr. Eugenio "did not appear" at the February 15, 2024 mediation); Dkt. No. 67-2 (email from Mr. McLawsen to Mr. Eugenio informing him – to no avail – that voluntarily consenting to a judgment would save him "roughly" between "$4,000-6,000 or more" in attorneys' fees).

\* \* \* \* \*

Using the reasonable hours and rates discussed above, the lodestar amount for Mr. McLawsen is 40.65 hours multiplied by $600 per hour, which totals $24,390. The lodestar amount for Mr. Kolasinski is 15.1 hours multiplied by $300 per hour, which totals $4,530.[3] Accordingly, the Court awards Plaintiff a total of $28,920 in attorneys' fees.

## B. CONCLUSION

The Court **GRANTS IN PART and DENIES IN PART** Plaintiff's motion, Dkt. No. 66, and awards Plaintiff a total of $28,920 in attorneys' fees, with $24,390 to compensate Mr. McLawsen and $4,530 to compensate Mr. Kolasinski.

**IT IS SO ORDERED.**

Dated: 8/2/2024

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[3] The Court notes that Mr. Eugenio had an opportunity to raise any objections to the sums requested and any arguments tending to undermine their reasonableness by filing an opposition to Plaintiff's motion. He did not do so.

7